UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMIE L. DOTE-LOWERY,

                          Plaintiff,

     v.                                                                                6:14-cv-00570

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                          Defendant.
_____

THOMAS J. McAVOY,
Senior United States District Judge

## DECISION & ORDER

## I.  INTRODUCTION

     Jamie L. Dote-Lowery ("Plaintiff") brings this action pursuant to § 205(g) of the Social Security Act ("SSA"), 42 U.S.C. § 405(g), to review a final determination by the Commissioner of Social Security ("Commissioner") denying his application for benefits. Plaintiff contends that the Administrative Law Judge ("ALJ") erred in two regards: (1) by determining that she could return to her past relevant work; and (2) by failing to give appropriate weight to the medical source statements of her treating physicians. The Commissioner argues that the ALJ's decision is supported by substantial evidence and made in accordance with the correct legal standards.

     Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings. For the reasons that follow, Plaintiff's motion is granted and the matter is remanded to the Commissioner.

II. BACKGROUND

The Court assumes familiarity with the facts and procedural history of the case, as well as the undisputed medical record.

III. DISCUSSION

### a. Past Relevant Work

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2012, her alleged disability date. At step two, the ALJ found that Plaintiff had the following severe impairments: Marfan syndrome; fibromyalgia; dysphagia; Hashimoto's thyroiditis; irritable bowel syndrome (IBS); gastroesophageal reflux disease; alopecia (baldness), and dermatitis. At step three, the ALJ found that Plaintiff's impairments, both singly or in combination, did not meet or medically equal a listed impairment in the Listings at 20 C.F.R. Part 404, Subpart P, Appendix 1. Before proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except she could not climb ladders, ropes or scaffolds; could only occasionally climb ramps/stairs, balance, stoop, kneel, crouch or crawl; and she needed to avoid concentrated exposure to extreme heat and humidity, slippery and uneven surfaces, hazardous machinery, and unprotected heights.

In making this RFC determination, the ALJ considered Plaintiff's symptoms and the extent to which the symptoms reasonably could be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and Social Security Ruling (SSR) 96-4p and SSR 96-7p. Tr. 18-27. Using this RFC and based on vocational expert ("VE") testimony, the ALJ concluded that Plaintiff was able to perform her past relevant work as a clinical analyst. Tr. 27.[1] Therefore, the ALJ determined that Plaintiff

---

[1] Although the ALJ's "finding 6" stated that Plaintiff is capable of performing her past relevant work as a registered nurse and as a clinical analyst (Tr. 27), the discussion which follows this finding limits the ALJ's decision at step four to Plaintiff's past work as a clinical analyst. *See* Tr. 28.

2

was not disabled under the Act. Tr. 28; *see* 20 C.F.R. § 404.1520(f).

Plaintiff argues that the ALJ's determination at step four is not supported by substantial evidence because the Social Security Rules and regulations require that in order for a position to be considered "past relevant work," a claimant must have held the position for a period of time sufficient to learn the required skills. Plaintiff contends that there is insufficient evidence that she held a clinical analyst position long enough to be considered "past relevant work." Plaintiff also contends that her specific exertional and non-exertional impairments prevented her from performing in a clinical analyst position. The Court disagrees with both contentions.

1. Sufficient Time at the Clinical Analyst Position

The VE testified that she was familiar with Plaintiff's vocational background from reviewing Plaintiff's file and listening to her testimony on December 12, 2013. Tr. 80. The VE then testified that Plaintiff's past job as a registered nurse was skilled and medium in exertion. Tr. 80. The job required a SVP (specific vocational preparation ) of 7 (Tr. 80), meaning that the job required over 2 years and up to 4 years to learn. U.S. Department of Labor, Dictionary of Occupational Titles, (DOT), Appendix C. The VE further identified Plaintiff's past job as a clinical analyst, which was skilled and sedentary in exertion, and also required a SVP of 7. *Id.*

Plaintiff argues that the record is unclear as to how long Plaintiff performed her job as a clinical analyst, and that, therefore, there was insufficient evidence that she obtained the requisite skills for the clinical analyst position to be considered "past relevant work" under the Commissioner's regulations. Pl. Br. at 3-4 (citing 20 C.F.R. §§ 404.1565(a), 404.1571 through 404. 1575; SSR 82-61, 1982 WL 31386). The Court disagrees.

On December 12, 2013, Plaintiff testified that her most recent job was with Oneida Healthcare as a clinical analyst, which she started in 2009. Tr. 52. Plaintiff's work history report, which she completed on October 22, 2012, listed her jobs at Oneida Healthcare as a "RN-Clinical Coordinator Manager" from 2002 to

3

2009, and "RN-Clinical Analyst" from 2009 to 2012. Tr. 185. Her earnings records confirm earnings from Oneida Healthcare for years 2009 through 2012. *See* Tr. 165-66; 173-75, 180-82; *see also* Tr. 171. This evidence is sufficient to support the conclusion that Plaintiff performed as a clinical analyst for approximately three years, a requisite period of time to allow the position to be classified as "past relevant work" under the Commissioner's regulations. *See* 20 C.F.R. § 404.1565. Plaintiff's motion in this regard is denied.

2. Capable of Performing the Clinical Analyst Position

There was also sufficient evidence to support the conclusion that Plaintiff could perform in a clinical analyst position. The ALJ asked the VE to assume a hypothetical individual the same age as Plaintiff, and having the same education and work experience as Plaintiff and who could perform a full range of light work, except this individual would need to avoid climbing ladders, ropes or scaffolds; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch crawl; and would need to avoid concentrated exposure to extreme heat and humidity, slippery and uneven surfaces, and hazardous machinery and unprotected heights. Tr. 80-81. When asked if this hypothetical individual could perform Plaintiff's past work, the VE responded that this individual would not be able to perform Plaintiff's past job as a nurse, but could perform her past job as a clinical analyst. Tr. 81.

Plaintiff argues that the vocational expert should have been questioned further as to whether Plaintiff's specific exertional and non-exertional impairments prevented her from performing in a clinical analyst position like she previously held. However, while given the opportunity to cross-examine the VE on this issue at the hearing, Plaintiff failed to present this issue to the VE for clarification. *See* Tr. 81-84. Instead, Plaintiff presented testimony regarding the physical component of the clinical analyst position that she held at Oneida Healthcare. *Id.* The particulars of Plaintiff's past employment are of no moment. When assessing Plaintiff's ability to perform her past work at step four, the Commissioner may consider the demands of Plaintiff's jobs either as she

4

performed them, or as generally performed in the national economy. *See* 20 C.F.R. § 404.1560(b)(2)(A VE may offer relevant evidence concerning the physical and mental demands of a claimant's past relevant work, either as actually performed or as generally performed in the national economy.); SSR 82-61, 1982 WL 31387; *see also Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003); *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981)(in making prima facie case of disability, claimant must not only show inability to return to her former job, but also inability to return to former type of work). While Plaintiff might not be able to perform the clinical analyst position as she actually performed it, Plaintiff failed in her burden to prove at step four that she could not perform the position as it is generally performed in the national economy. Plaintiff's motion in this regard is denied.

b. Medical Source Statements

Plaintiff also contends that the ALJ erred by failing to give appropriate weight to the medical source statements of her treating physicians. The Court agrees

There are two medical source statements in issue. The first is from Dr. Jeffrey Mulholland, dated December 19, 2013. The second is from Dr. Benjamin Sommer, dated April 17, 2014.

1. Dr. Mulholland's MSS

Dr. Mulholland's medical source statement reveals that Plaintiff treated with him from 2009 through 2013 for various issues including fibromyalgia, chronic joint pain, fatigue, exhaustion and malaise. Plaintiff also treated with other physicians during this time. Tr. 18- 25. The ALJ completed a thorough review of the medical records of Plaintiff's treatment with the various physicians. *Id.*

On December 19, 2013, Dr. Mulholland submitted a one page document entitled "Medical Source Statement (Pain and Symptoms)." Tr. 584. The document is a form which allows the physician completing it to write in information (*i.e.* patient's diagnoses and prognoses), and to check boxes corresponding with pre-prepared questions. On the document, Dr. Mulholland indicates that Plaintiff's diagnoses and prognoses are:

5

"Marfan Syndrome, Fibromyalgia; Chronic MRSA infections; Chronic Pain Syndrome." In the area provided to set forth his objective findings supporting his opinions, Dr. Mulholland writes: "Recurrent infections of skin, diffuse pain in joints, went to Mayo Clinic and was [illegible] to have Marfan's." Dr. Mulholland checks the box indicating "pain, fatigue, and/or weakness is present and found to be incapacitating to this patient causing this individual to be off-task for at least 50% of the time in an 8-hour workday." Dr. Mulholland also checks "yes" in the box indicating that Plaintiff's impairments were "likely to produce good days and bad days." Next to this Dr. Mulholland writes: "more bad than good from what she tells me." Dr. Mulholland also checks the box indicating that his estimate is that, on average, Plaintiff was likely to be absent from work more than four days per month.

In addressing Dr. Mulholland's medical source statement, the ALJ writes:

> As for the opinion evidence, Dr. Mulholland submitted a medical source statement on behalf of the claimant on December 19, 2013, following the disability hearing. He indicated that the claimant had pain, fatigue, and/or weakness that would be incapacitating and cause her to be off-task at least 50% of the time in an 8-hour workday, and that her impairments were likely to produce good days and bad days, though "more bad than good from what she tells me." He concluded [by estimating that] claimant [ ] would be absent from work for more than four days per month (Exhibit 16F). A claimant's residual functional capacity is not a medical issue, but is an administrative finding that is reserved to the Commissioner. Accordingly, medical opinions expressed in this form can never be given controlling weight or special significance, even if it is given by a treating physician (SSR 96-Sp, 20 CFR 404.1527(e) and 416.927(e)). Here, Dr. Mulholland's statement is not a medical opinion, but rather a "check the box" statement, that appears to be based solely upon the claimant's subjective allegations. Indeed, as noted in his statement, he alleged the claimant would have more bad days than good "from what she tells me." Additionally, this statement is inconsistent with his own treatment notes for the claimant, which do not contain any evidence that would support that the claimant's medical impairments, either solely or in combination, would limit her to being off-task for 50% of the day or that she would be off-work at least four days per month. Therefore, based upon these deficiencies, I must give his assessment limited weight in consideration of the RFC.

Tr. 25-26.

This paragraph indicates that the ALJ rejected Dr. Mulholland's medical source statement for two reasons. One, because Dr. Mulholland's medical source statement is believed to offer an opinion as to Plaintiff's RFC. And, two, because Dr. Mulholland's opinion is "inconsistent" with his treatment notes.

6

The first reason offered by the ALJ for rejecting Dr. Mulholland's opinion is inapplicable to this situation. While it is clear that "some kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are 'reserved to the Commissioner,'" *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)(citing 20 C.F.R. § 404.1527(e)(1)), " the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability." *Id.* Indeed, medical source statements are ordinarily sought in arriving at a claimant's RFC. *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (summary order)("Social Security Administration rules provide that '[m]edical reports should include ... [a] statement about what you [i.e., the Claimant] can still do despite your impairment(s) ... .")(citing 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6)). Dr. Mulholland's medical source statement does not appear to give a opinion as to the ultimate issue of Plaintiff's RFC, but only on the issue of Plaintiff's ability to attend to work on a regular basis. While this information is relevant to the RFC determination, it is not an opinion on the ultimate issue. Thus, this does not constitute a meritorious basis to reject Dr. Mulholland's medical source statement.

The ALJs decision also does not provide sufficient analysis to reject Dr. Mulholland's opinion on the grounds that the statement is inconsistent with Dr. Mulholland's treatment notes. As indicated, the ALJ found that Dr. Mulholland's treatment notes "do not contain any evidence that would support that the claimant's medical impairments, either solely or in combination, would limit her to being off-task for 50% of the day or that she would be off-work at least four days per month." Tr. 26. However, the ALJ does not point to any portion or entry in Dr. Mulholland's treatment notes indicating affirmatively that Plaintiff was capable of working a full day or on a regular basis.[2] Rather, the ALJ's determination appears to be based on the ALJ's assessment of Dr. Mulholland's opinion when compared to Dr. Mulholland's treatment notes. But such a comparative assessment,

---

[2] The Commissioner points to one treatment note indicating that Plaintiff requested that Dr. Mulholland release her back to work because her medication had improved her condition. However, this note does not indicate definitively that a return to work would equate with the ability to perform those functions continuously over an eight hour day, or whether Plaintiff would have the ability to regularly attend work.

7

without citation to particular findings or observations by Dr. Mulholland, is insufficient. *See Snell*, 177 F.3d at 134 ("Reserving the ultimate issue of disability to the Commissioner ... does not exempt administrative decision makers from their obligation ... to explain why a treating physician's opinions are not being credited."); *see also Tankisi*, 521 F. App'x at 33 ("Although the RFC is assessed using 'all the relevant evidence in [the] case record,' the medical opinion of a treating physician is given 'controlling weight' as long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is not inconsistent with other substantial evidence in the record.") (quoting 20 C.F.R. § 404.1545(a)(1) and citing 20 C.F.R. §§ 404.1527(c)(2)); *id.* ("Even if the treating physician's opinion is contradicted by other substantial evidence, and so is not controlling, it may still be entitled to significant weight 'because the treating source is inherently more familiar with a claimant's medical condition than are other sources.'")(quoting *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir.1988)).

Further, the fact that the opinions expressed in Dr. Mulholland's medical source statement were ambiguous and - at least in one respect - based on Plaintiff's subjective complaints, does not provide a basis for outright rejection. It was incumbent upon the ALJ to fill any gap in the record in an attempt to determine the basis of Dr. Mulholland's opinion. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (An ALJ has an affirmative duty to develop the administrative record during Social Security hearings, even when the claimant is, as in this case, represented by counsel.)(citations omitted); *Roat v. Barnhart*, 717 F. Supp.2d 241, 264 (N.D.N.Y. 2010) (holding that where a "medical record paints an incomplete picture of [claimant's] overall health during the relevant period, as it includes evidence of the problems, the ALJ had an affirmative duty to supplement the medical record, to the extent it was incomplete, before rejecting [claimant's] petition."); *Moore v. Astrue*, 2013 WL 935855, at *3 (N.D.N.Y. Feb. 05, 2013)("Accordingly, '[t]he ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's finding that the record is inadequate or the

8

ALJ's reliance on an expert's conclusion that the evidence is ambiguous.'" )(Rep. Rec., Hummel, M.J.)(quoting *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) and citing *Roat*, 717 F. Supp.2d at 264); *see also* 20 C.F.R. § 404.1512(d) (describing Commissioner's duty to develop a "complete medical history for at least the [twelve] months preceding the month in which [claimant] file[s an] application ...."); 20 C.F.R. § 404.1512(e) (explaining how the Commissioner will attempt to retrieve the entire medical history from claimant's treating sources as opposed to always seeking consultative examinations). If this required the ALJ to seek further information from Dr. Mulholland about the opinions expressed in the medical source statement in order to reach the proper RFC, then that should have occurred. Accordingly, the matter must be remanded for either an expansion of the record or a more detailed articulation of the basis for the rejection of Dr. Mulholland's opinions as expressed in his medical source statement.

    2. Dr. Sommer's MSS

Dr. Sommer's medical source statement was submitted to the Appeals Council after the ALJ issued a determination in the matter. The medical source statement consisted of two parts - a "Medical Source Statement (Physical)," and a "Medical Source Statement (Pain and Symptoms)." Tr. 589-91. Both are forms like the one used by Dr. Mulholland, and, like Dr. Mulholland, Dr. Sommer checks a box indicating that "pain, fatigue, and/or weakness is present and found to be incapacitating to this patient causing this individual to be off-task for at least 50% of the time in an eight hour workday." Tr. 591. Different from Dr. Mulholland, however, Dr. Sommer opines that Plaintiff would need to lie down intermittently throughout the day at an unpredictable frequency, Tr. 590; has "severe limitations" in handling, fingering, and feeling, *id.;* and often falls. Tr. 590, 591. The medical source statement, completed on April 7, 2014, concerns the period of October 10, 2013 through March 12, 2014.

20 C.F.R. § 404.970(b) requires that if new and material evidence is submitted to the Appeals Council,

9

the Appeals Council shall consider the additional evidence if it relates to the period on or before the date of the administrative law judge hearing decision. 20 C.F.R. § 404.970(b). In so doing, the Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision, and will then review the case to determine if the ALJ's actions, findings, or conclusion was contrary to the weight of the evidence currently of record. *Id.*

The ALJ issued his decision on March 4, 2014. The matter concerns a period of disability beginning on August 1, 2012 and continuing through the date of the decision. Thus, Dr. Sommer's medical source statement relates to a period on or before the date of the ALJ's hearing decision.

In an October 24, 2014 letter to Plaintiff's counsel, the Appeals Council writes:

> The evidence you submitted by letter dated April 22, 2014, consisting of an April 17, 2014 medical source statement by Benjamin Sommer, MD, has been reviewed and the Appeals Council has concluded that no change in the prior action is warranted. The case is now before the district court and no further administrative action will be taken pending the Court's review.

Tr. 585.

This statement does not explicitly satisfy the Commissioner's obligation to evaluate the new evidence in the context of the entire record. 20 C.F.R § 404.970(b). Further, the statement was submitted to the Appeals Council on April 25, 2014, Tr. 592, and the instant action was commenced on May 14, 2014. The fact that the Appeals Council did not review the medical source statement until October 24, 2014 did not relieve it of its obligation under 20 C.F.R § 404.970(b). Consequently, on remand the Commissioner should address Dr. Sommer's medical source statement similarly to Dr. Mulholland's medical source statement.

IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is GRANTED, and the Commissioner's motion for judgment on the pleadings is DENIED. The decision of the Commissioner is

10

REVERSED and this case is REMANDED, pursuant to sentence four of 42 U.S.C. § 405(g), for a determination consistent with this Decision and Order.

IT IS SO ORDERED.

Dated: October 1, 2015

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge